[Cite as *State ex rel. Ames v. Emp. Relations Bd.*, 2019-Ohio-1003.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Diedree Ames, | : | |
| Relator, | : | |
| v. | : | No. 17AP-380 |
| The State of Ohio State Employment Relations Board, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |
| | : | |

D E C I S I O N

Rendered on March 21, 2019

**On brief:** *Daniel H. Klos*, for relator.

**On brief:** *Dave Yost*, Attorney General, *Michael D. Allen*, and *Tiffany S. Henderson*, for respondent.

IN MANDAMUS

DORRIAN, J.

{¶ 1} In this original action, relator, Diedree Ames, requests a writ of mandamus ordering respondent, State Employment Relations Board, to find probable cause that relator's union, Service Employees International Union District 1199, engaged in an unfair labor practice when the union failed to pursue arbitration on behalf of relator. The matter arises out of a grievance filed by relator after she was terminated from her employment as a parole officer with the Ohio Department of Rehabilitation and Correction.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends that this court deny relator's request for a writ of mandamus.

{¶ 3}   No party has filed objections to the magistrate's decision.  The case is now before this court for review.

{¶ 4}   No error of law or other defect is evident on the face of the magistrate's decision. Therefore, we adopt the findings of fact and conclusions of law contained therein. Accordingly, relator's request for a writ of mandamus is denied.

*Writ of mandamus denied.*

KLATT, P.J., and SADLER, J., concur.

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Diedree Ames, | : | |
| Relator, | : | |
| v. | : | No. 17AP-380 |
| State Employment Relations Board, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on October 26, 2018

*Daniel H. Klos*, for relator.

*Michael DeWine*, Attorney General, *Michael D. Allen,* and *Tiffany S. Henderson*, for respondent.

### IN MANDAMUS

{¶ 5} Relator, Diedree Ames, brings this original action seeking a writ of mandamus ordering respondent, State Employment Relations Board ("SERB"), to find probable cause that relator's union, Service Employees International Union District 1199 ("SEIU" or "the union") engaged in an unfair labor practice ("ULP") when the union failed to pursue arbitration on behalf of relator. The matter arises out of a grievance filed by relator after she was terminated from her employment as a parole officer with the Ohio Department of Rehabilitation and Correction ("ODRC").

Findings of Fact:

{¶ 6}   1.   Relator was terminated from her position as a parole officer with ODRC on January 18, 2011.

{¶ 7}   2.   Relator's union representation for the period in question was provided by SEIU.

{¶ 8}   3.   Relator's employment during the pertinent period was governed by a collective bargaining agreement ("CBA") between SEIU and ODRC with effective dates of July 1, 2009 through June 30, 2011.

{¶ 9}   4. Articles 6, 7, and 8 of the CBA contain, respectively, a non-discrimination clause, grievance and arbitration procedures, and a progressive discipline schedule.

{¶ 10}  5. Article 6 provides as follows:

### 6.01 Non Discrimination

Neither the Employer nor the Union shall unlawfully discriminate against any employee of the bargaining units on the basis of race, sex, creed, color, religion, age, national origin, political affiliation, Union affiliation and activity, handicap or sexual orientation, or discriminate in the application or interpretation of the provisions of this Agreement, except those positions which are necessarily exempted by bona fide occupational qualifications due to the uniqueness of the job, and in compliance with the existing laws of the United States or the State of Ohio. In addition, the Employer shall comply with all the requirements of the Federal Americans with Disabilities Act and the regulations promulgated under that Act.

The Employer and Union hereby state a mutual commitment to equal employment opportunity, in regards to job opportunities within the Agencies covered by this Agreement.

### 6.02 Agreement Rights

No employee shall be discriminated against, intimidated, restrained, harassed, or coerced in the exercise of rights granted by this Agreement.

{¶ 11}  6. Under Article 7.06 of the CBA, only the union can advance a grievance to arbitration.

{¶ 12}  7. ODRC maintained an employee conduct policy that prohibited employees from "[m]aking obscene gestures or statements, or false, abusive, or inappropriate statements."   (Relator's unfair labor practice charge, ODRC Standards of Employee Conduct, Rule 12.)   The policy also prohibits "[t]hreatening, intimidating or coercing another employee or a member of the general public."   (Relator's Unfair labor practice charge, ODRC Standards of Employee Conduct, Rule 12.)

{¶ 13}  8.  Relator filed a grievance through the union on February 6, 2011 asserting that her termination was the result of disparate treatment and unequal enforcement of these workplace rules and policies.

{¶ 14}  9.  The grievance progressed through mediation on August 30, 2011 without resolution.

{¶ 15}  10.  On May 25, 2012, SEIU informed relator by letter that the union would not pursue arbitration for relator's grievance.

{¶ 16}  11.  Relator appealed this decision not to arbitrate to the SEIU executive committee on September 27, 2012.

{¶ 17}  12.  On October 12, 2012, the executive committee informed relator by letter that it confirmed the decision not to arbitrate based upon the poor likelihood of prevailing.

{¶ 18}  13.  The parties have stipulated that relator filed her original charge in SERB case No. 2012-ULP-12-0321 on December 18, 2012, and an amended charge under the same case number on December 20, 2012. This is the SERB case underlying the present mandamus action.

{¶ 19}  14. Relator filed an earlier ULP charge against SEIU, apparently based on the same circumstances, under SERB case No. 2012-ULP-05-0114. The course of proceedings and outcome of that case are not developed in the record here, and the parties do not assert that the previous SERB matter has any impact on the present one.

{¶ 20}  15.  Documentation relating to relator's own work discipline history and eventual termination from employment is not included in the stipulated evidence in this mandamus action, and the record does not further disclose the extent to which the circumstances of her dismissal were discussed or developed during the union grievance process or before SERB.

{¶ 21} 16.  The record contains other filings acknowledging that one stated reason for relator's termination was relator's posting of social media messages using off-color language and making threatening statements to co-workers. Relator suggests, and respondent does not contest, that relator in an undefined work-related context stated to a co-worker, "[y]our ass is mine."  (Amended ULP charge, Statement of Facts of Unfair Labor Practice at 4.)   In addition, relator made a Facebook post stating "I'll gimp into work tomorrow.  I guess I could just shoot them all . . . lol."  (Amended ULP charge, Statement of Facts of Unfair Labor Practice at 4.)

{¶ 22} 17.  Relator's ULP charge states that the union failed to consider two examples of similar conduct from relator's co-workers that gave rise to lesser discipline.  In one, Sheri Blackburn, a similarly-situated employee, authored a work-account e-mail containing similar threatening language:

> According to the Incident Report, on November 23, 2009 Parole Services Supervisor Angelika Manz sent Parole Officer Sheri Blackburn an email advising her that her performance evaluation was due on December 23, 2009 and asked her to email three goals for the next rating period.
>
> On November 24, 2009, PSS Manz received the following email from PO Blackburn:
>
> "Ok, here are my 3 goals:
>
> 1)  Try to maintain my stress level and keep my anger in check against these low lifes we half (sic) to deal with.  Especially when they have more toys than me and eat better than me.
>
> 2)   Try not to shoot anyone unless absolutely necessary. Especially when I hear them brag about the above.
>
> 3)  And above all, go home alive everyday to watch my crappy TV, eat ramen noodles and pot pies, and check my email on my crappy computer.
>
> 3 more are forthcoming."

(Relator's Amended ULP Charge, Jan. 11, 2010 Division of Parole and Community Service Fact-Finding Investigatory Report at 1-2.)

{¶ 23} 18.  Relator's ULP complaint cites another example of disparate discipline stemming from an investigation by the division of parole.  This was triggered by a complaint by relator that another colleague, Parole Officer Jill Brady, had created a false e-mail address through Google in order to further a complaint about relator herself:

> As a result of this complaint, Ms. Ames was investigated and disciplined for using the internet at work.  Upon Ms. Ames obtaining a copy of the investigation and learning of the anonymous complaint against her, she contacted Google to find where the e-mail address originated from.  Ms. Ames reported the false email account was created by Parole Officer Jill Brady's significant other, Rosemary Lewellen.  Ms. Ames reported that it is illegal to create a false email address and demanded that Ms. Brady be investigated.

(Relator's Amended ULP Charge, undated Dvision of Parole Investigatory Letter at 1.)

{¶ 24} The investigator further determined through interviewing Parole Officer Brady that Brady had logged onto various internet sites through her state computer for personal purposes.  This investigation closed with the conclusion from the investigator that Brady had admitted to improper internet usage while at work.  The investigator did not render a conclusion with respect to the impact of the alleged creation of a false e-mail account to further allegations against relator.

{¶ 25} 19.  SERB's Labor Relations Specialist, Judy Knapp, filed a memorandum on January 18, 2013 recommending dismissal of relator's ULP charge.  The investigator's conclusions were as follows:

> Information gathered during the investigation reveals the Union's actions were not arbitrary, discriminatory, or in bad faith when it did not advance Ms. Ames' grievance to arbitration.  After the Union's initial decision not to advance the grievance, it provided Ms. Ames an opportunity to appeal the decision through its Executive Board.  The Appeals Committee, based on the information provided, made the final decision not to advance the grievance.  Pursuant to [SERB's decision in AFSCME Local 11, SERB No. 93-019 (Dec. 20, 1983)], Ms. Ames had no absolute right to have her grievance advanced to arbitration.

(Investigator's Memorandum, Jan. 18, 2013 at 2.)

{¶ 26} 20.  On January 31, 2013, SERB rendered a determination accepting the investigator's conclusion, finding that:

Information gathered during the investigation revealed the Charged Party's actions were not arbitrary, discriminatory, or in bad faith when it did not advance Charging Party's grievance to arbitration. After Charged Party's initial decision not to advance the grievance, it provided Charging Party an opportunity to appeal the decision through the Executive Board. The Appeals Committee, based on the information provided, made the decision not to advance the grievance. Accordingly, the charge is dismissed with prejudice for lack of probable cause to believe the statute has been violated.

{¶ 27} 21. In addition to the proceedings before SERB and in the present mandamus action, relator has pursued a related complaint in the Court of Claims of Ohio, which granted summary judgment in favor of ODRC. This court affirmed the Court of Claims' judgment in *Ames v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-119, 2014-Ohio-4774.

{¶ 28} 22. Relator filed her complaint in mandamus before this court on May 25, 2017.

{¶ 29} 23. SERB filed an answer on June 29, 2017.

{¶ 30} 24. Relator filed her amended complaint on August 7, 2017.

{¶ 31} 25. SERB filed its amended answer on September 1, 2017.

Discussion and Conclusions of Law:

{¶ 32} An employee organization commits an unfair labor practice if it "[f]ail[s] to fairly represent all public employees in a bargaining unit." R.C. 4117.11(B)(6). "Whoever violates section 4117.11 of the Revised Code is guilty of an unfair labor practice remediable by the state employment relations board." R.C. 4117.12(A). Any public employee in a bargaining unit may file a charge with SERB alleging that an employee organization committed an unfair labor practice by failing to fairly represent the employee. R.C. 4117.12(B). In accordance with the process detailed in R.C. 4117.12(B), "SERB must issue a complaint and conduct a hearing on an unfair labor practice charge if, following an investigation, it has a reasonable ground to believe that an unfair labor practice has occurred." *State ex rel. Portage Lakes Edn. Assn., OEA/NEA v. State Emp. Relations Bd.*, 95 Ohio St.3d 533, 2002-Ohio-2839, ¶ 38.

{¶ 33} SERB's probable cause determinations in a ULP case are not reviewable by direct appeal. *Ohio Assn. of Pub. School Emps., Chapter 643, AFSCME/AFL-CIO v.*

*Dayton City School Dist. Bd. of Edn.*, 59 Ohio St.3d 159 (1991). In the absence of an adequate remedy in the ordinary course of the law, the present action in mandamus is the appropriate remedy to obtain judicial review of SERB's order dismissing the ULP charge for lack of probable cause. *State ex rel. Serv. Emp. Internatl. Union, Dist. 925 v. State Emp. Relations Bd.*, 81 Ohio St.3d 173 (1998), syllabus.

{¶ 34} The dismissal of a ULP charge by SERB will be overturned in a mandamus action to this court only if relator can prove SERB abused its discretion. *State ex rel. Portage Lakes* at ¶ 35. The relator is not required to irrefutably establish the merits of her grievance: "The pertinent issue is whether probable cause exists to believe that an unfair labor practice has occurred, not whether an unfair labor practice actually occurred." (Emphasis omitted.) *Serv. Emp. Internatl. Union* at 181. However, in reviewing SERB's dismissal of the ULP charge, because mandamus proceedings are "premised upon the relators' establishing an abuse of discretion by SERB in its probable-cause determination, courts should not substitute their judgment for that of the administrative agency." *Portage Lakes* at ¶ 41.

{¶ 35} Public employees have no absolute right under R.C. 4117.11(B)(6) to see a grievance taken to arbitration. *State ex rel. Carnes v. State Emp. Relations Bd.*, 10th Dist. No. 16AP-46, 2017-Ohio-1137, ¶ 46, citing *AFSCME Local 2312*, SERB No. 89-029 (Oct. 16, 1989). As a result, unions have discretion in deciding which grievances warrant the allocation of resources to take them to arbitration. *Id.*, citing *In re State Emp. Relations Bd. v. Ohio Civil Serv. Emp. Assoc., AFSCME Local 11, AFL-CIO*, SERB No. 93-019 (Dec. 20, 1993), citing *Vaca v. Sipes*, 386 U.S. 171 (1967).

{¶ 36} Based upon the stipulated record before the magistrate, the briefs submitted by the parties, and the arguments presented at oral argument, the magistrate concludes SERB did not abuse its discretion in dismissing relator's ULP charge against the union for lack of probable cause. Because of this conclusion, the magistrate declines to address SERB's argument that relator's mandamus action was brought so tardily that it must be barred by application of the doctrine of laches.

{¶ 37} A violation of the duty of fair representation under R.C. 4117.11(B)(6), as discussed above, will be found only if the union acted arbitrarily, discriminatorily, or in bad faith. *State ex rel. Hall v. State Emp. Relations Bd.*, 122 Ohio St.3d 528, 2009-Ohio-3603,

¶ 22.  In *Hall*, the Supreme Court of Ohio cited with approval SERB's standard in assessing a union's failure to fairly represent all public employees:

> "If there are no apparent factors that show legitimate reason for a union's approach to an issue, the Board will not automatically assume arbitrariness. Rather, we will look to evidence of improper motive: bad faith or discriminatory intent. An element of intent must be present; it may be evinced by discrimination based upon an irrelevant and invidious consideration, or it may be indicated by hostile action or malicious dishonesty i.e., bad faith. In the absence of such intent, if there is no rational basis for the action, arbitrariness will be found only if the conduct is so egregious as to be beyond the bounds of honest mistake or misjudgment."

*Id.* at ¶ 22, quoting *In re Wheeland*, 10th Dist. No. 94AP-1424 (June 6, 1995), quoting *AFSCME Local 2312*.

{¶ 38} In the present case, it is difficult to find a breach of the duty of fair representation because the evidence before the magistrate is insufficiently developed regarding the circumstances of relator's own dismissal.  While she extensively argues, and provides some evidence to support, potentially worse violations by similarly-situated co-workers, the record does not contain a developed factual basis to assess the reasons for which relator herself was terminated, including any evidence regarding her past work record.

{¶ 39} Even to the extent that relator's admitted comments appear less egregious than those for which co-workers received lesser punishment, the distinction is insufficient to conclude SERB abused its discretion in refusing to go forward with the ULP complaint on the basis that the union's decision not to advance relator's grievance to arbitration was not supported by legitimate reasons.  "Flexibility and deference must be accorded the union in its efforts to seek benefits and enforcement for the unit as a whole, even though the desires of individual employees or groups of employees within the unit may go unfulfilled." *Wheeland*, quoting *AFSCME Local 2312*.  The SEIU did provide SERB with rational reasons for not advancing relator's grievance to arbitration.  Both the appeals committee and the union mediator concluded the grievance was unlikely to succeed at arbitration.

{¶ 40}  Based on the foregoing, the magistrate concludes relator has not established a clear legal right to have SERB issue a probable cause finding on her ULP charge or a clear

legal duty on the part of SERB to do so.  SERB did not abuse its discretion in finding a lack of probable cause, nor did SERB fail to properly investigate the charge.  It is the magistrate's decision that this court deny relator's request for a writ of mandamus.


                                        /S/ MAGISTRATE
                                        MARTIN L. DAVIS



**NOTICE TO THE PARTIES**

**Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).**