[Cite as *State ex rel. Teamsters Local Union No. 284 v. State Emp. Relations Bd.*, 2021-Ohio-3318.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Teamsters Local Union No. 284, | : | |
| | : | |
| Relator-Appellant, | : | |
| | : | No. 20AP-307 |
| v. | | (C.P.C. No. 19CV-6170) |
| | : | |
| State Employment Relations Board et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents-Appellees. | : | |

D E C I S I O N

Rendered on September 21, 2021

**On brief:** *Moses Law Offices, L.L.C.*, and *Michael A. Moses*, for appellant, Teamsters Local Union No. 284. **Argued**: *Michael A. Moses.*

**On brief:** *Fishel Downey Albrecht & Riepenhoff, LLP, Stephanie L. Schoolcraft,* and *David A. Riepenhoff,* for appellees, Ross County Board of Commissioners and Ross County Sheriff.* **Argued:** *Stephanie L. Schoolcraft.*

**On brief**: *David Yost*, Attorney General, and *Sherry M. Phillips* for appellee, State Employment Relations Board. **Argued**: *Sherry M. Phillips.*

APPEAL from the Franklin County Court of Common Pleas.

MENTEL, J.

{¶ 1} Relator-appellant, Teamsters Local Union No. 284 ("Union"), appeals from the decision and entry denying appellant's request for a writ of mandamus against defendants-appellees, State Employment Relations Board ("SERB"), the Ross County Board of Commissioners ("Commissioners"), and the Ross County Sheriff ("Sheriff").

{¶ 2} For the reasons that follow, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 3}    The Union is the exclusive bargaining representative for two bargaining units comprised of Sheriff's office employees.  The two groups include Deputy Sheriffs ("Blue Unit") and Sergeants, Lieutenants, and Captains ("Gold Unit").  The two groups of employees entered into separate, but substantially similar, collective bargaining agreements ("CBAs") with the Sheriff.  The CBAs commenced on July 1, 2017 and ran through June 30, 2020.  Article 40, Section 40.3 in the CBAs address any potential change of insurance carriers or methods of providing insurance coverage.  Article 40, Section 40.3 reads as follows:

> The Employer will pay eighty-five percent 85% of the premium for single or family coverage for hospitalization, vision and dental coverage[s]; the employee shall pay the remainder by payroll deduction. For the duration of this Agreement, the Employer will continue to provide full-time bargaining unit employees with hospitalization coverage in the same manner as provided to non-bargaining unit employees. The level of health insurance benefits provided to bargaining unit employees will also be equivalent to those provided to non-bargaining unit employees. The Union employees will be provided a copy of the plan description. The Employer may, during the life of this Agreement, change insurance carriers or methods of providing insurance coverage. For the employee's share of insurance premiums, the Employer agrees to deduct in even amounts one-half (1/2) of the monthly insurance premiums for the first two (2) pay periods each month.

{¶ 4}    Pursuant to R.C. 305.171, the board of county commissioners of any county is authorized to provide health insurance and benefits to county employees.  Since 2011, the Commissioners have contracted health insurance for all Ross County employees through the County Employee Benefits Consortium ("CEBCO").  Prior to 2018, the CEBCO health insurance package included a $200 cash incentive for eligible employees and spouses that completed the wellness plan.  On September 17, 2018, the Commissioners notified all county employees that starting in 2019, the wellness program would not include a cash incentive but a lower premium of approximately $300 for a single plan and $600 for a family plan for all employees and spouses that complete the program.  The wellness plan included health evaluations, screenings, and participation in wellness programming.  The

requirements for the wellness plan are identical to previous iterations of the agreement outside the change from cash payments to reduced premiums.

{¶ 5}   On December 14, 2018, the Union filed an unfair labor practice charge with SERB against the Commissioners and Sheriff.  The Union alleged the Sheriff and the Commissioners unilaterally increased the premiums for members that elected not to participate in the wellness program.  The Union contended the change constituted an unfair labor practice in violation of R.C. 4117.11(A)(1) and (5).  On February 8, 2019, the SERB labor relations specialist issued an investigator's memorandum.  The investigator concluded the change to the wellness program was made by CEBCO, not the Commissioners, and affected all the counties that belong to that consortium.  SERB also found that the matter "appears to be a purely contractual issue that encompasses no arguable statutory violation and should be addressed through the parties' binding arbitration process."  (Feb. 8, 2019 SERB Report.)  The investigator recommended dismissing appellant's charge with prejudice for lack of probable cause.  On February 21, 2019, SERB adopted the investigator's recommendation and found no probable cause to support a violation of R.C. 4117.11(A)(1) or (5).  The appellant's charge was dismissed with prejudice.

{¶ 6}   On July 31, 2019, the Union filed a complaint for a writ of mandamus and declaratory judgment against SERB, the Sheriff, and the Commissioners.  The Union filed an amended complaint without the declaratory judgment claim on September 24, 2019.  Appellees filed timely answers to the amended complaint.  On January 22, 2020, the parties agreed to a stipulated briefing schedule.

{¶ 7}   On May 4, 2020, the trial court filed its decision and entry denying the Union's request for a writ of mandamus.  The trial court issued an extensive opinion detailing the facts and procedural history of the case.  The trial court ultimately concluded that SERB did not abuse its discretion in finding there was no probable cause to support the Union's unfair labor practice charges under R.C. 4117.11(A)(1) or (5).

{¶ 8}   Appellant filed a timely appeal.

## II. ASSIGNMENT OF ERROR

{¶ 9}   Appellant assigns the following as trial court error:

[1.] THE LOWER COURT ERRED WHEN IT RULED THAT APPELLANT TEAMSTERS LOCAL 284 WAS NOT ENTITLED TO A WRIT OF MANDAMUS COMPELLING APPELLEE STATE EMPLOYMENT RELATIONS BOARD TO COMPLY WITH ITS CLEAR LEGAL DUTY UNDER R.C. SEC. 4117.12 (A)-(B) TO PROPERLY INVESTIGATE THE UNFAIR LABOR PRACTICE CHARGE FILED BY APPELLANT OVER THE REFUSAL TO BARGAIN OF APPELLEES ROSS COUNTY SHERIFF AND ROSS COUNTY COMMISSIONERS WITH APPELLANT OVER A MANDATORY SUBJECT OF BARGAINING.

[2.] THE LOWER COURT ERRED WHEN IT RULED THAT APPELLANT WAS NOT ENTITLED TO A WRIT OF MANDAMUS COMPELLING APPELLEE STATE EMPLOYMENT RELATIONS BOARD TO COMPLY WITH ITS CLEAR LEGAL DUTY UNDER R.C. SEC. 4117.12 (A)-(B) TO DETERMINE THAT PROBABLE CAUSE EXISTED TO BELIEVE AN UNFAIR LABOR PRACTICE HAD OCCURRED WHEN APPELLEES ROSS COUNTY SHERIFF AND ROSS COUNTY COMMISSIONERS FAILED TO BARGAIN WITH APPELLANT OVER A MANDATORY SUBJECT OF BARGAINING.

## III. STANDARD OF REVIEW

{¶ 10} As set forth in R.C. 4117.12(B), SERB is required to issue a complaint and conduct a hearing on a charge of unfair labor practice if, after investigating the charge, there is probable cause for finding that a violation has occurred. A determination of probable cause under R.C. 4117.12(B) is not reviewable by direct appeal. *State ex rel. Ames v. State Emps. Relations Bd.*, 10th Dist. No. 17AP-380, 2019-Ohio-1003, ¶ 33, citing *Ohio Assn. of Pub. School Emps., Chapter 643, AFSCME/AFL-CIO v. Dayton City School Dist. Bd. of Edn.*, 59 Ohio St.3d 159 (1991). As such, an action in mandamus is an appropriate remedy to obtain judicial review of SERB's order dismissing the unfair labor practices charge for lack of probable cause. *Id.*, citing *State ex rel. Serv. Emp. Internatl. Union, Dist. 925 v. State Emp. Relations Bd.*, 81 Ohio St.3d 173 (1998), syllabus.

{¶ 11} To be entitled to a writ of mandamus, a party must demonstrate, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a corresponding clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. New Wen, Inc. v. Marchbanks*, 159 Ohio St.3d 15, 2020-Ohio-63, ¶ 15, citing *State ex rel. Mars Urban Solutions, L.L.C. v. Cuyahoga*

*Cty. Fiscal Officer*, 155 Ohio St.3d 316, 2018-Ohio-4668, ¶ 6. " 'The pertinent issue is whether probable cause exists to believe that an unfair labor practice has occurred, not whether an unfair labor practice actually occurred.' " *Ames* at ¶ 34, quoting *Serv. Emp. Internatl. Union* at 181. Courts will not overturn the dismissal of an unfair labor practice charge by SERB in a mandamus action unless appellant has shown SERB abused its discretion. *State ex rel. Portage Lakes Edn. Assn., OEA/NEA, et al. v. State Emp. Relations Bd., et al.,* 95 Ohio St.3d 533, 2002-Ohio-2839, ¶ 35. An abuse of discretion means a decision was unreasonable, arbitrary, or unconscionable. *State ex rel. Elsass, et al. v. Shelby Cty. Bd. of Commrs., et al.,* 92 Ohio St.3d 529, 533 (2001). As mandamus proceedings are premised on the Union demonstrating an abuse of discretion by SERB in its probable cause determination, courts should not substitute their judgment for that of the administrative agency, even if conflicting evidence on an issue is presented. *Ames* at ¶ 34, citing *Portage Lakes* at ¶ 41. While we generally review a trial court's mandamus determination for abuse of discretion, issues of law, as is the case here, requires de novo review. *State ex rel. Peregrine Health Servs. of Columbus, LLC v. Sears,* 10th Dist. No. 18AP-16, 2020-Ohio-3426, ¶ 21-23.

## IV. LEGAL ANALYSIS

### A. Appellant's First Assignment of Error

{¶ 12} In the Union's first assignment of error, it argues that the trial court erred concluding SERB did not abuse its discretion by dismissing the Union's unfair labor practice charge for lack of probable cause. Specifically, the Union argues that the unilateral change to the health insurance benefits and premium payments, as set forth in the CBAs, is an unfair labor practice in violation of R.C. 4117.11(A)(1) and (5).

{¶ 13} Pursuant to R.C. 4117.11(A), it is an unfair labor practice for a public employer, its agents, or representatives to:

> (1) Interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Chapter 4117. of the Revised Code or an employee organization in the selection of its representative for the purposes of collective bargaining or the adjustment of grievances;
>
> * * *

(5) Refuse to bargain collectively with the representative of his employees recognized as the exclusive representative or certified pursuant to Chapter 4117. of the Revised Code;

R.C. 4117.11(A)(1) and (5).

{¶ 14} While there is no definition of probable cause under R.C. 4117, the Supreme Court of Ohio has analogized SERB's determination regarding probable cause to that of a prosecutor investigating a criminal complaint. *See Portage Lakes* at ¶ 37. As in a criminal context, the decision to not prosecute an unfair labor practice is discretionary and generally not subject to judicial review. *State ex rel. Howard v. State Emp. Relations Bd.*, 10th Dist. No. 15AP-220, 2016-Ohio-4765, ¶ 44, citing *Ohio Assn. of Pub. Emps., Chapter 643 v. Dayton City School Dist. Bd. of Edn.*, 59 Ohio St.3d 159 (1991). In criminal proceedings, the determination of probable cause is one of fact. *Id.* " 'In making its [probable cause] determination, SERB will consider not only the evidence that supports the allegations of the charge but also, of course, any information that may rebut the charge or offer a defense to the violation alleged.' " *State ex rel. Johnston v. State Emp. Relations Bd.*, 10th Dist. No. 03AP-824, 2004-Ohio-2839, ¶ 23, quoting *Portage Lakes* at ¶ 40. The moving party bears the initial burden in demonstrating probable cause that an unfair labor practice has occurred. *State ex rel. Fuller v. State Emp. Relations Bd.*, 10th Dist. No. 10AP-630, 2011-Ohio-1599, ¶ 28. In *Portage Lakes*, the Supreme Court stated, "SERB must issue a complaint and conduct a hearing on an unfair labor practice charge if, following an investigation, it has a reasonable ground to believe that an unfair labor practice has occurred." *Portage Lakes* at ¶ 38. The pertinent question becomes whether SERB abused its discretion in finding that there were no reasonable grounds to believe than an unfair labor practice has occurred. *Serv. Emps. Internatl. Union.*

{¶ 15} In the case sub judice, the Commissioners elected to use CEBCO to provide health insurance benefits since 2011. Under the relevant terms of the CBAs, the employers must pay eighty-five percent (85%) of the members' health insurance premiums while the employees are responsible for the remaining fifteen percent (15%) by payroll deduction. Prior to the change in the wellness program, individuals and their spouses would receive a $200 cash incentive for completing the program. In 2019, employees would receive an annual $300 reduction in their premiums (or $600 dollars per year for employees enrolled

in family coverage) for completing the wellness program. This change amounts to a shift from a monetary incentive to a reduction in health care premiums for participating individuals. While the insurance premium would presumably increase or decrease, depending on the individual's participation in the wellness program, there is no evidence the change resulted in an employee paying over 15 percent of the insurance premiums. As there is no evidence that 85 percent of the member's health insurance premiums were not covered by the employer, we find the change in the wellness program is consistent with the plain language of the CBAs. Moreover, the CBAs expressly provide that the employer may, during the course of the CBAs, change insurance carriers or methods of providing insurance coverage. There is no provision in the CBAs that preclude the insurance premiums from rising throughout the course of the agreements. Accordingly, we conclude that SERB did not abuse its discretion in finding there was no probable cause to support the Union's unfair labor practice charges under R.C. 4117.11(A)(1) or (5).

{¶ 16} *In re Montgomery Cty. Children's Servs.*, SERB No. 2005-009 (Nov. 16, 2005) is analogous to the instant case. A brief review is illustrative. In *Montgomery Cty.*, the Professionals Guild of Ohio filed an unfair labor practice charge against Montgomery County Children's Services alleging violations of R.C. 4117.11(A)(1) and (5) for refusing to bargain over the effects of changes to the medical plan. The CBA provision at issue stated that "[a]ll employees * * * shall be entitled to participate in the County's group health insurance program in accordance with the Plan." *Id.* at 4. The CBA also required the employer to provide "group insurance coverage selected by the County." *Id.* SERB concluded that there was no unfair labor practice as the changes to the group health insurance plan were consistent with the Montgomery County CBA and that the changes were the result of parties not bound by the CBA.

{¶ 17} For the foregoing reasons, the trial court did not err concluding SERB did not abuse its discretion by dismissing the Union's unfair labor practice charge for lack of probable cause. Appellant's first assignment of error is overruled.

**B. Appellant's Second Assignment of Error**

{¶ 18} In the Union's second assignment of error, it alleges "SERB's refusal to exercise jurisdiction over the Ross County Commissioners and Ross County Sheriff" and its

failure to find probable cause to the change in the wellness program constituted an unfair labor practice under R.C. 4117.11(A)(1) and (5). (Appellant's Brief at 6.) We disagree.

{¶ 19} On February 21, 2019, SERB dismissed the Union's unfair labor practices charge with prejudice concluding the investigation revealed no probable cause to believe the charged parties violated R.C. 4117.11(A)(1) or (5). SERB noted that this matter "appears to be a purely contractual issue that encompasses no arguable statutory violation and should be addressed through the parties' binding arbitration process." (Feb. 8, 2019 SERB Report.) On May 4, 2020, the trial court found that SERB did not abuse its discretion finding there was no probable cause of a statutory violation. Contrary to appellant's assertion, SERB did not refuse to exercise jurisdiction over appellees and did not leave the resolution of the grievance to the arbitration procedure under the CBAs. The reference to the arbitration provision was an acknowledgement of the alternative dispute method available, not a decision to decline jurisdiction in the case. *See In re Upper Arlington Edn. Assn.*, SERB No. 92-010, 3, fn. 1 (June 30, 1992) (concluding, in part, that charges of unfair labor practice that have no arguable statutory violation, and are pure contractual disputes, are properly dismissed for lack of probable cause).

{¶ 20} The Union argues that the Commissioners and Sheriff "changed members' insurance plan premium payments by mandating increased payments if members declined to participate in wellness plans under a policy announced in September 2018." (Appellant's Brief at 6.) This argument is without merit. Again, there is no language in the CBAs that preclude an increase in payments as long as it is consistent with the requisite percentages as stated in Section 40.3 of the CBAs. Furthermore, the new policy does not create a mandatory increase in premium payments if an employee declines to participate but offers an opportunity to reduce the premium by participating in the wellness program. While appellant could consider this a distinction without a difference, there is no penalty for those who decline to participate in the wellness plan only an opportunity for a reduction.

{¶ 21} Next, the Union argues SERB failed to follow its own precedent in *State Emp. Relations Bd. v. Geauga Cty. Sheriff*, SERB No. 2004-001 (Mar. 17, 2004). We disagree.

{¶ 22} In *Geauga Cty.*, the Ohio Patrolmen's Benevolent Association filed an unfair labor practice charge with SERB alleging that the Geauga County Sheriff violated R.C. 4117.11(A)(1) and (5). SERB found that there was probable cause to believe the Geauga

County Sheriff had committed an unfair labor practice by failing to bargain over the effects of the new health care coverage and program.

{¶ 23}  While *Geauga Cty.* presents some factual similarities to the instant case, the language of the CBAs is distinct.  In *Geauga Cty.,* the CBA stated "[t]here will be no increase in the employee contribution or reduction of coverage for this insurance."  *Id.* at 5. Here, Section 40.3 reads in relevant part, "[t]he Employer will pay eighty-five percent (85%) of the premium for single or family coverage for hospitalization, vision and dental coverages; the employee shall pay the remainder by payroll deduction. * * * Employer may, during the life of this Agreement, change insurance carriers or methods of providing insurance coverage."  Unlike the CBA in *Geauga Cty.*, the CBAs in the instant case did not state that there would be no increase in the employee contribution or reduction of coverage, only that the employer would pay 85 percent of the premium while the employee paid the remainder by payroll deduction.  Accordingly, *Geauga Cty.* is distinct from the present case as the CBAs at issue do not preclude any increase in insurance premiums only an increase in the percentage of the employee's contribution.

{¶ 24}  Finally, the Union argues that appellees' actions had a "significant impact on employees' terms and conditions of employment by the mandatory submission to instructive health assessments with no clear protections for confidential health information."  (Appellant's Brief at 10.)  Appellant's argument is without merit.  No such mandate exists as the employees may elect not to participate in the wellness program.  Moreover, it was CEBCO, not appellees, that initiated the change to the program.  Regarding the Union's confidentiality concerns, the Commissioners presented evidence that the wellness plan was consistent with the Health Insurance Portability and Accountability Act, the Americans with Disabilities Act, and the Genetic Information Nondiscrimination Act.  We see no reason to deviate from this conclusion based on the affidavits submitted by the Union as we cannot merely substitute our own judgment for SERB's judgment.  *See Ames* at ¶ 34, quoting *Portage Lakes* at ¶ 41.

{¶ 25}  Appellant's second assignment of error is overruled.

## V. CONCLUSION

{¶ 26} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BEATTY BLUNT and NELSON, JJ., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned
to active duty under the authority of the Ohio Constitution,
Article IV, Section 6(C).

_____