[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ware v. Crawford*, Slip Opinion No. 2022-Ohio-295.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-295

THE STATE EX REL. WARE *v.* CRAWFORD.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ware v. Crawford*, Slip Opinion No. 2022-Ohio-295.]

*Mandamus—Public Records Act—Statutory damages—Writ granted in part and denied in part.*

(No. 2020-1498—Submitted July 13, 2021—Decided February 8, 2022.)

IN MANDAMUS.

————————————

**Per Curiam Opinion announcing the judgment of the court.**

{¶ 1} Relator, Kimani Ware, is an inmate at the Trumbull Correctional Institution ("TCI").  Ware seeks a writ of mandamus ordering respondent, Donna Crawford, an inspector with the prison's office of institutional services, to produce public records that he requested on April 6 and April 29, 2020.  Ware also seeks statutory damages under R.C. 149.43(C) for Crawford's alleged failure to produce those records.

**{¶ 2}** For the reasons below, we grant some, but not all, of Ware's requested relief. We grant a writ of mandamus as to Ware's April 6 public-records request, deny the writ as to the April 29 request, and award Ware $1,000 in statutory damages.

## I. Background

**{¶ 3}** On April 6, 2020, Ware transmitted a public-records request to Crawford via the prison's "JPay" electronic-kite-communication system. Crawford is the prison's custodian of inmate-grievance records. Ware requested copies of four informal complaints identified as TCI0220000336, TCI03320000416, TCI030000844, and TCI0320001136. Crawford responded to Ware by electronic kite two days later, stating: "Your copies were placed in the institution mail today 4/8/2020. There is no TCI0320001136."

**{¶ 4}** On April 9, Ware sent another message to Crawford via electronic kite, which stated: "I need a copy of ICR#TCI0320001136 which was filed on 3/13/20." Ware's message did not state whether he had received copies of the other documents he had requested on April 6. Crawford responded the same day, stating that she would print a copy of the requested document. (The record does not indicate why Crawford was able to locate the requested document that she previously told Ware did not exist.) On April 11, Ware sent an electronic kite to Crawford, claiming he still had not received copies of the documents that Crawford purportedly mailed to him on April 8. On April 22, Crawford responded that she had sent the copies twice and that Ware should have received them.

**{¶ 5}** Ware claims that he sent three more public-records requests to Crawford on April 29, 2020, this time by certified mail. According to evidence presented by Ware, "Request I" sought copies of four informal complaints, two of which (TCI03320000416 and TCI0320001136) he had also asked for in the April 6 request; "Request II" asked for copies of nine kites; and "Request III" sought a copy of an April 9, 2019 email related to the prison's handling of "legal mail" and

copies of emails between Crawford and the prison cashier's office from March 21 through March 30, 2020, and from April 6 through April 29, 2020.

{¶ 6} Ware acknowledges that Crawford sent him copies of the informal complaints referred to in Request I. But Ware alleges that he has not received any of the documents identified in Request II or Request III. He also contends that Crawford still has not provided all of the documents identified in his April 6 public-records request.

{¶ 7} Ware commenced this action on December 10, 2020, seeking a writ of mandamus compelling Crawford to produce the requested records and an award of statutory damages under R.C. 149.43(C)(2). We granted an alternative writ and set a schedule for the presentation of evidence and briefs on the merits. 161 Ohio St.3d 1477, 2021-Ohio-801, 164 N.E.3d 485.

## II. Ware's Motions

{¶ 8} After Crawford filed her evidence, Ware filed a motion for leave to file additional evidence. And after Crawford filed her merit brief, Ware filed a motion for judicial notice. Crawford has not responded to Ware's motions.

{¶ 9} Ware did not submit the proposed evidence that he wants this court to consider with his motion for leave to file additional evidence. However, Ware's "motion for judicial notice" includes additional evidence that Ware contends contradicts Crawford's evidence, and he asks this court to "take judicial notice of the facts in the attached evidence." In essence, the evidence that Ware submitted with his motion for judicial notice constitutes rebuttal evidence that he wants us to consider in this mandamus action.

{¶ 10} It is appropriate to seek leave of court to submit rebuttal evidence after the deadline for submitting evidence in an original action. *See State ex rel. Gil-Llamas v. Hardin*, 164 Ohio St.3d 364, 2021-Ohio-1508, 172 N.E.3d 998, ¶ 14 (striking rebuttal evidence filed in a mandamus action because "relators failed to seek leave of this court to file the supplemental evidence"). We therefore grant the

motion for leave to file additional evidence and accept as evidence the documents attached to Ware's motion for judicial notice.

**{¶ 11}** However, we deny the motion for judicial notice. Ware is asking us to take judicial notice of the *facts* contained in his rebuttal evidence. But judicial notice applies only to facts that are not subject to reasonable dispute. Evid.R. 201. Ware is asking us to take judicial notice of disputed facts and legal conclusions, which is improper. *See, e.g.*, *State ex rel. Harris v. Turner*, 160 Ohio St.3d 506, 2020-Ohio-2901, 159 N.E.3d 1121, ¶ 17.

### III. Analysis

**{¶ 12}** Mandamus is the appropriate remedy to compel compliance with the Public Records Act. R.C. 149.43(C)(1)(b). To be entitled to a writ of mandamus, Ware must demonstrate by clear and convincing evidence that he has a clear legal right to the requested relief and that Crawford has a clear legal duty to provide it. *State ex rel. Cincinnati Enquirer v. Sage*, 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, ¶ 10. We construe the Public Records Act liberally in favor of broad access, with any doubt resolved in favor of disclosure of public records. *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996).

### A. The April 6 Request

**{¶ 13}** Crawford does not dispute that the records Ware requested on April 6, 2020, are public records subject to disclosure under R.C. 149.43. There is a factual dispute, however, regarding whether Crawford has already provided the records that Ware requested. Crawford contends that she provided the documents; Ware says she did not. Crawford argues that this factual dispute must be resolved against Ware because he has failed to prove by clear and convincing evidence that she did not send the requested records.

**{¶ 14}** Ware bears the burden to plead and prove facts showing that he requested a public record pursuant to R.C. 149.43(B)(1) and that Crawford did not

make the record available. *See Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 26. Ware also bears the burden of persuasion to show entitlement to a writ of mandamus by clear and convincing evidence. *Id.* "Clear and convincing evidence" is a measure or degree of proof that is more than a preponderance of evidence, but it does not extend the degree of certainty beyond a reasonable doubt as required in a criminal case; clear and convincing evidence produces in the trier of fact's mind a firm belief of the fact sought to be established. *State ex rel. Miller v. Ohio State Hwy. Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 14.

{¶ 15} There is no dispute that Ware requested public records in his April 6, 2020 electronic kite to Crawford. But Crawford contends that Ware has not proved by clear and convincing evidence that she *did not* send the records to him through the institutional mail as she claims to have done. To adopt Crawford's position would require Ware to prove a negative. Crawford is in the better position to affirmatively show that she did, in fact, copy and transmit the records to Ware. For similar reasons, this court places the burden on the public office or records custodian to plead and prove facts showing the applicability of an exception under the Public Records Act. *Welsh-Huggins* at ¶ 27-28. Just as the custodian is in a better position than the requester to know the contents of a record and whether it fits within an exception, *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland*, 38 Ohio St.3d 79, 83, 526 N.E.2d 786 (1988), so too is the custodian in the superior position to demonstrate compliance with the obligation to provide copies of public records, *see State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, ¶ 33. In this case, Crawford presents no evidence to corroborate her assertion that she mailed the documents that Ware

requested, nor has she submitted copies of the documents that she claims to have sent to Ware in response to his April 6 request.[1]

{¶ 16} Crawford also argues that Ware cannot meet his burden of persuasion, because he "acknowledged receipt of certain records" that she sent on April 8, 2020. This argument is unavailing because Crawford mischaracterizes what Ware said. In response to Ware's April 6 request, in which Ware sought records of four informal complaints, Crawford stated that she placed three of the requested records in the institution mail on April 8, 2020. In response, Ware sent a follow-up communication to Crawford stating: "I need a copy of ICR#TCI0320001136 which was filed on 3/13/20." Ware's statement is not fairly characterized as acknowledging receipt of the other records that he had requested on April 6. Ware is repeating his request for informal complaint TCI0320001136 and providing additional detail in the form of the record's filing date (which he had not provided in the original request), and nothing more. Crawford was able to locate TCI0320001136 after receiving the follow-up request, and she provided Ware with a copy of that document in May 2020.

{¶ 17} Of the four records sought by Ware in his April 6 request, the record before us shows that Crawford eventually provided two of them—the informal complaints identified as TCI03320000416 and TCI0320001136—after Ware asked for them again in his April 29 request. But the evidence does not show that Crawford has provided the other records that Ware identified in his April 6 request. We therefore grant a writ of mandamus as to the public-records request of April 6, 2020, and order Crawford to provide copies of the informal complaints identified as TCI0220000336 and TCI030000844.

---

1. Crawford avers in an affidavit: "I have retained the original printouts of the records requested by [Ware], which displays the date printed, that is the [ap]proximate date the copies were sent to [Ware]." Crawford did not, however, submit those documents as corroborating evidence. In contrast, Crawford submitted copies of the documents that she sent to Ware in response to his April 29, 2020 request.

*B. The April 29 Request*

{¶ 18} There is also a factual dispute about whether Crawford responded fully to Ware's public-records request dated April 29, 2020. Ware contends that he sent three public-records requests to Crawford by certified mail on April 29, requesting copies of four informal complaints (Request I), various kites (Request II), and several emails (Request III). Ware has submitted a copy of his April 29 requests—a two-page document with a handwritten, certified-mail tracking number at the bottom of each page. Crawford, however, disputes that the public-records requests that Ware has submitted as evidence are the actual requests that he sent to her.

{¶ 19} According to Crawford, she received only a one-page request seeking copies of informal complaints identified as TCI119000458, TCI03320000416, TCI0320001136, and TCI0420000107 (i.e., Ware's "Request I" above). Moreover, unlike the request that Ware submitted as evidence, Crawford's copy does not show a certified-mail tracking number. Crawford contends that the requests identified as "Request II" and "Request III" in Ware's evidence were not part of the certified-mail request she had received from Ware. Crawford further contends that she responded fully to the only April 29 request she had received from Ware by sending copies of the four requested records.

{¶ 20} As further corroboration for her testimony, Crawford submits the affidavit of Frank Cimmento Jr., a mail-room employee at TCI. Cimmento's affidavit summarizes the procedure followed when an inmate requests that an item be sent by certified mail. Cimmento testified that on receiving a sealed, addressed item from an inmate to be sent by certified mail, the mail-room staff first obtains approval for the cost of the postage from the inmate's institution account through the TCI cashier's office. Once sufficient funds are obtained from the inmate's account, mail-room staff prepares the item to be sent via certified mail, which includes placing the tracking number on the outside of the sealed item. The

inference that follows is that the public-records requests that Ware submitted as evidence cannot be copies of the requests that were sent to Crawford on April 29, because Ware could not have known the certified-mail tracking number when he wrote his request and submitted it to the TCI mail room to be posted.

{¶ 21} Ware's rebuttal evidence challenges certain aspects of Cimmento's summary of the certified-mail process at the prison. Ware also submitted copies of certified-mail receipts, cash-withdrawal slips, and the envelope in which he sent his public-records requests to show his knowledge of the certified-mail tracking number. But Ware does not rebut Cimmento's key point that the certified-mail tracking number is unknown to the inmate until *after* the envelope containing the mailed items is sealed. Ware does not explain how he could have written the certified-mail tracking number on his April 29 public-records requests when the requests would have been sealed in an envelope before the number was assigned.

{¶ 22} Thus, Ware has not proved by clear and convincing evidence that he sent the public-records requests identified above as Request II and Request III. And as to Request I, Ware admits that Crawford has provided copies of the records sought in that request. We therefore deny the writ as to the April 29, 2020 public-records request.

*C. Statutory Damages*

{¶ 23} Ware seeks statutory damages for Crawford's failure to comply with the Public Records Act. R.C. 149.43(C)(2) allows a relator to recover $100 for each business day during which a respondent failed to comply with the public-records law, beginning on the date of commencement of the public-records action, up to a maximum of $1,000.

{¶ 24} Because Ware has established a violation of the Public Records Act with regard to his April 6, 2020 request, he is eligible to recover statutory damages. Ware transmitted his request by electronic kite sent through the prison's "JPay" system. This method of delivery qualifies him to recover statutory damages. *See*

*State ex rel. Griffin v. Sehlmeyer*, __ Ohio St.3d __, 2021-Ohio-1419, __ N.E.3d __, ¶ 21 (holding that the "JPay" kite system constitutes electronic delivery that satisfies R.C. 149.43(C)(2)).

{¶ 25} Crawford does not argue that the facts presented here justify a decision to reduce or to not award statutory damages. *E.g.*, *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 565, 2015-Ohio-4914, 45 N.E.3d 981, ¶ 30 (awarding statutory damages when public office made no argument concerning the R.C. 149.43(C)(2)(a) and (b) factors). Her only argument against an award of statutory damages is that she complied with her obligations under the Public Records Act by sending Ware copies of the records he had requested. As set forth above, however, the record does not establish that Crawford provided Ware with all of the records identified in his April 6 request. We therefore award Ware $1,000 in statutory damages.

## IV. Conclusion

{¶ 26} For the foregoing reasons, we grant a writ of mandamus ordering Crawford to provide copies of the records requested in Ware's April 6, 2020 public-records request that have not been produced to date, namely, the informal complaints identified as TCI0220000336 and TCI030000844. We also award Ware $1,000 in statutory damages under R.C. 149.43(C)(2) for Crawford's failure to respond fully to the April 6 request. We deny the writ as to Ware's April 29, 2020 public-records requests.

Writ granted in part
and denied in part.

O'CONNOR, C.J., and FISCHER and DONNELLY, JJ., concur.

BRUNNER, J., concurs in judgment only.

KENNEDY, J., dissents, with an opinion joined by STEWART, J.

DEWINE, J., dissents, with an opinion.

_____

**KENNEDY, J., dissenting.**

{¶ 27} I agree with granting of a writ of mandamus and awarding statutory damages in this case, but I would grant both for the records requests that relator, Kimani Ware, made on April 29, 2020, rather than for the request that he made on April 6, 2020. Therefore, I dissent.

### The April 6, 2020 Request

{¶ 28} My approach to the April 6, 2020 public-records request differs from that of the other dissent. The court need not evaluate the affidavits of Ware and respondent, Donna Crawford, an inspector with the office of institutional services at Trumbull Correctional Institution ("TCI"), from the perspective of determining who is telling the truth and who is lying. Instead, they should be evaluated from the perspective that both Ware and Crawford are telling the truth. And that certainly is possible here. Crawford could have placed the requested records in the institutional-mail system *and* Ware may not have received them. The statements of both Ware and Crawford could be true.

{¶ 29} Crawford claims to have in her possession copies of the documents that she sent to Ware. She further claims that on those documents is the date she printed them and placed them in the institutional-mail system. Her failure to include those documents as part of the evidence in this case is not fatal to her position, because she has provided an unequivocal statement that she responded to the April 6, 2020 records request that Ware made through the prison's electronic-kite system.

{¶ 30} Crawford does not state in her affidavit that she *delivered* the records to Ware, and there is no affidavit from anyone else claiming to have *delivered* the records to Ware. Crawford simply asserts that she placed the records in the institutional-mail system for delivery. She also indicates that institutional-mail deliveries to inmates are not logged. So, neither party has a mail log on which to rely to show what truly happened. The question presented here is whether

10

Crawford's duty ended when she placed the requested documents in the institutional-mail system for delivery. Based on the plain language of the statute, it did.

{¶ 31} R.C. 149.43 states that all public records that are responsive to a requester's demand shall be promptly prepared and made available for inspection. But not all records are inspected by the requester on-site where the records are kept. R.C. 149.43(B) addresses instances when the requester does not seek to review the records in person but asks for the public office to send the records to him. Pursuant to R.C. 149.43(B)(7)(a), "a public office or person responsible for public records shall transmit a copy of a public record to any person by United States mail or by any other means of delivery or transmission within a reasonable period of time after receiving the request for the copy."

{¶ 32} In this case, Crawford had a duty to transmit the requested records to Ware. But the term "transmit" is not defined by the statute. "When a term is not defined in the statute, we give the term its plain and ordinary meaning." *Lingle v. State*, 164 Ohio St.3d 340, 2020-Ohio-6788, 172 N.E.3d 977, ¶ 15. To "transmit" means "to cause to go or be conveyed to another person or place : SEND." (Capitalization sic.) *Webster's Third New International Dictionary* 2429 (1993).

{¶ 33} To cause something to go is not the same as to cause it to be *received*. As used by the General Assembly, the plain meaning of "transmit" does not require delivery—it means to cause something to go toward another person or destination, or to send. Therefore, the statute does not contemplate delivery by the public office or person responsible for the public record. And the remaining statutory language in the applicable sentence supports that meaning.

{¶ 34} R.C. 149.43(B)(7)(a) prescribes that the public office shall transmit the record "by United States mail or by any other means of delivery or transmission." The statute recognizes that another entity may be responsible for the ultimate delivery of the requested records. The public office transmits the

record, and the United States Postal Service or another entity is responsible for delivering it. The public office's duty is complete when it puts the record into the delivery stream. Crawford did that when she placed the documents in the institutional-mail system.

{¶ 35} To be entitled to a writ of mandamus, Ware must establish by clear and convincing evidence that Crawford failed to comply with R.C. 149.43(B)(7). *See State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, paragraph three of the syllabus ("Relators in mandamus cases must prove their entitlement to the writ by clear and convincing evidence"). Ware is entitled to a writ of mandamus if Crawford did not copy and send the requested records to him. Ware does not have to have received the records for Crawford to have met her duty. Ware states in his affidavit that he did not receive the records that he requested on April 6, and that is some evidence that Crawford did not send them. But that evidence is overcome by Crawford's affidavit, which strikes at the heart of the matter—she testifies that she sent the records. Since that is all she needs to have done, she did not fail to meet her duty under R.C. 149.43.

{¶ 36} As we wrote in *State ex rel. Ellis v. Maple Hts. Police Dept.*, 158 Ohio St.3d 25, 2019-Ohio-4137, 139 N.E.3d 873, ¶ 6, "Although it is possible that [the relator] has not received the documents, he has not contradicted the evidence showing that [the respondent] satisfied any duty it may have had by mailing him the responsive documents." Ware has not contradicted Crawford's evidence regarding her production of the records that he requested on April 6. Therefore, Ware's mandamus claim is moot as to the April 6, 2020 request. *See id.* at ¶ 7.

### The April 29, 2020 Requests

{¶ 37} I also depart from the lead opinion and the other dissent regarding Ware's public-records requests of April 29, 2020, which he sent by certified mail. Crawford claims that all she received from Ware in the certified-mail envelope was a request for some informal complaints. She includes as an exhibit to her affidavit

a copy of the document that she says came from Ware.  The document is set forth below as Image 1.

Donna Crawford, Inspector
P.o. Box 901
Leavittsburg, OHio, 44430

Date: April 29, 2020


I request a copy of the following Informal Complaints: #TCI 11190004585 TCI03320000 4116; TCI 032000/136; TCI 0420000107;

*Image 1*

**{¶ 38}** But Ware claims that the request he sent to Crawford included more than the request for informal complaints; he claims that it also included a request for copies of electronic kites and a request for copies of emails. Ware claims to have sent the two-page document shown in Image 2 below.

> Donna Crawford, Inspector
> P.o. Box 901
> Leavittsburg, oHio, 44430
>
> Date: April 29, 2020
>
> I request a copy of the following Informal complaints: #TCI 1119000458; TCI 0332 0000 416; TCI 0320001136; TCI 0420000107;
>
> Public Records Request #II
>
> I request a copy of the following Kites, #TCI 0420000467; TCI 0420000467; TCI 04 20000 718; TCI 0420002098; TCI 0420002249; TCI 0420000717; TCI 0320002035; TCI 032 00 11146; TCI 0320000592
>
> * Public Records Requests
>   Under R.C. 149.43 *
>
> _Kimani Ware_
>
> Kimani Ware 470743
> Trumbull corr. Inst.
> P.o. Box 901
> Leavittsburg, oHio, 44430
>
> certified Mail: 7017 2400 0000 1299 7526
>
> [PaGE 1 of 2]

Donna Crawford, Inspector
P.O. Box 901
Leavittsburg, Ohio, 44430

Date: April 29, 2020

Public Records Request # III

I request a copy of the __Email__ (dated April 9, 2019)
that was send by Ms. Scott to your office pertaining to
Legal Mail for Noninmates) indigent inmates, a copy of the
Email (all emails) between you and the Cashier's office at
Trumbull corr. Inst. (dated April 6, 2020 Thru April 29, 2020), and
(March 21, 2020 Thru March 30, 2020).

Kimani Ware 470743
Trumbull Corr. Inst.
P.O. Box 901
Leavittsburg, Ohio, 44430

\* __Public Record Request__
__Under R.C. 149.43__ \*

certified Mail: 7017 2400 0000 7526

[PAGE 2 OF 2]

*Image 2*

**{¶ 39}** When an original action in mandamus is filed in this court, each justice sits as the trier of fact. *See State ex rel. Lindenschmidt v. Butler Cty. Bd. of Commrs*., 72 Ohio St.3d 464, 466, 650 N.E.2d 1343 (1995). And as the trier of fact, each justice may believe or disbelieve, in whole or in part, the testimony

presented to this court. *See Gillen-Crow Pharmacies, Inc. v. Mandzak*, 5 Ohio St.2d 201, 205, 215 N.E.2d 377 (1966).

**{¶ 40}** Compare Image 1 with Image 2. The lone paragraph in Image 1 is almost identical to the first paragraph in Image 2. The difference is that there are check marks on some of the document numbers in Crawford's version (Image 1), but those same check marks do not appear in Ware's version (Image 2).

**{¶ 41}** In order to believe that Crawford's version (Image 1) is an actual copy of Ware's request, you would have to believe that Ware placed the check marks on some of the document numbers. But Crawford's process of handling requests for copies of informal complaints indicates that she placed those check marks on the document numbers. And Crawford's duties reveal why she kept a copy of only a portion of Ware's April 29 public-records requests—the portion that she was responsible for producing and transmitting.

**{¶ 42}** Crawford states in her affidavit: "Upon receiving a request for a copy of records from an inmate, I print the correspondence for reference when searching for the requested items." Here, it appears that Crawford made a copy of the first paragraph of Ware's April 29 request to use as a checklist as she searched for those requested items. She then checked off the document numbers as she found the corresponding documents. This is exactly what happened when Crawford responded to Ware's April 6 request.

**{¶ 43}** On page 2 of Exhibit A attached to her affidavit, Crawford includes a copy of Ware's April 6 request sent by electronic kite. Three of the four document numbers have check marks on them. The fourth document—document number 1136, the one Crawford states she could not locate at the time of responding to the April 6 request—has no check mark.

**{¶ 44}** Ware's version of his April 29 records requests (Image 2) shows that his requests covered three types of documents: informal complaints, kites, and emails. Since each request sought different types of documents, it makes sense that

Crawford would make a copy of the portion of the request seeking the discrete type of document that she is responsible for—informal complaints. This explains why Image 1 ends abruptly with a semicolon. Nothing follows the semicolon. Not another request, not a signature, not an address to send the records to.

{¶ 45} Examining Crawford's April 2021 affidavit in conjunction with the other evidence, I reject that part of the affidavit in which she asserts that, notwithstanding the passage of almost one year, she could independently remember the exact contents of the April 29, 2020 public-records request that Ware submitted and that she could testify with certainty that the "request did not have *anything* written below 'TCI0420000107;'." (Emphasis sic.) The doubt that Crawford could remember receiving this specific records request in such detail is increased by all of the physical discrepancies between Image 1 and Image 2, such as the checkmarks and the size of the font. It therefore becomes less reasonable to believe that Ware made a public-records request that cut off midsentence, ending in a semicolon, and that failed to include his name and return address.

{¶ 46} In my view, Image 2, with the exception of the certified-mail tracking number, is a copy of the actual request that Ware submitted to Crawford. The writing in the first paragraph of Image 2 is identical to the writing in the lone paragraph in Image 1, except for the check marks. Every stroke of every letter is the same, every slant of every line. Ware's submission lists an initial request for informal complaints, followed by a semicolon. Two additional requests follow the semicolon. The document is signed. The return address for transmitting the records is provided.

{¶ 47} The fact that Crawford has a copy of only the first paragraph of Ware's requests does not alter this conclusion. In paragraph 17 of her affidavit she states, "As part of my job responsibilities, I respond to copy requests by Inmates for their individual grievance records. According to ODRC Legal Services, Inmate Grievance records are confidential and not public records pursuant to R.C.

5120.21(F) and O.A.C. 5120-9-31(H)." She also explains in paragraphs 15 and 16 of her affidavit:

> Any requests for public records that I may receive are immediately forwarded to the designated Public Records Request Officer, which is the TCI Warden's Assistant. It is not my obligation to respond to public records requests, ODRC [the Ohio Department of Rehabilitation and Correction] has specially trained designees for such duties.
>
> Any requests for kites and/or emails would be considered public records and would be forwarded to the appropriately trained public records designee.

{¶ 48} Ware's two additional requests are for kites and emails. That is why in paragraph 14 of her affidavit, Crawford states, "After a thorough review of my records, I have no record of receiving the version of the documents presented by Relator in his Affidavit of Support and identified as 'Exhibits G and H' [Image 2, the two-page April 29 request sent by certified mail] in this matter." Crawford would not have a copy of Ware's actual public-records requests, because she would not have produced and transmitted copies of kites and emails. Upon receipt of those requests, she would have sent them on to the "appropriately trained public records designee."

{¶ 49} While the exhibits she submitted might be "true and accurate copies of records as kept in the normal course of business at TCI," Image 1 is a document that Crawford created to attend to Ware's April 29 request, and her averment is not sufficient to prove that it is a copy of the document that Ware sent to TCI.

**{¶ 50}** Crawford did not respond to Ware's other requests for public records, because she responds only to requests for inmate grievance records. The other two April 29 requests were forwarded to someone else.

**{¶ 51}** Crawford's affidavit demonstrates that she would have sent any requests for records not involving an informal grievance to someone else in the prison. Crawford's testimony confirms that she would not have retained Ware's April 29 public-records requests herself, and her testimony explains why it is unlikely that the document that she submitted as evidence would contain all of Ware's April 29 records requests. It *is* likely that she created and retained a copy of the portion of the requests that she was responsible for producing and that she used that copy to check off the documents that she located and produced to Ware, just as she did when she responded to Ware's April 6 request. This does not require the assumption that public officials lied in their affidavits or that Crawford photocopied only a single paragraph of the two-page request (for example, by covering up subsequent writing with a blank piece of paper). Rather, Crawford testified that when she receives certain types of requests, she forwards them to "the designated Public Records Request Officer." It does not require a great leap of logic to infer that Crawford physically separated the individual records requests and retained only the request that she needed to fulfill in her capacity as an inspector with the office of institutional services while forwarding the rest of the requests to someone else.

**{¶ 52}** In contrast, there is no reason to believe that the copy of the April 29 request that Ware claims he sent to Crawford (Image 2) does not contain all of the records requests that he claims to have sent. Therefore, Ware has submitted clear and convincing evidence that the public office in this case failed to respond to two parts of his public-records requests that were sent by certified mail on April 29. Ware has "prove[d] facts showing that he * * * requested a public record pursuant to [the statute] and that the public office or records custodian did not make the

record available." *See Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 26. Therefore, I would grant a writ of mandamus for the documents identified in his second and third public-records requests sent by certified mail on April 29.

**{¶ 53}** Since the public office failed to comply with a requirement of R.C. 149.43(B), and because Ware submitted his request by certified mail, he is eligible for statutory damages of $100 per day, beginning the day he filed this mandamus action, up to a maximum of $1,000. R.C. 149.43(C)(2). Since he filed the action more than 10 days ago, I would award $1,000. Neither of the reduction factors in R.C. 149.43(C)(2)(a) or (b) applies in this case. This is not an instance of a public office believing that the Public Records Act would not require a production of records. Rather, it is a failure of process.

### Conclusion

**{¶ 54}** For the reasons set forth above, I dissent from the majority's decision granting a writ of mandamus and statutory damages for the April 6, 2020 records request. I further dissent from the majority's decision to deny the writ of mandamus and to deny statutory damages for the April 29, 2020 records requests that Ware sent by certified mail. I would grant a writ of mandamus and award $1,000 in statutory damages for the April 29, 2020 requests.

STEWART, J., concurs in the foregoing opinion.

————————————

**DEWINE, J., dissenting.**

**{¶ 55}** We have long held that it is the relator's burden to prove a violation of the Public Records Act by clear and convincing evidence. Thus, when there is conflicting evidence on a material issue that points with equal weight in both directions, we will not issue a writ of mandamus.

**{¶ 56}** We have consistently applied these rules in cases where there is conflicting evidence about whether a government entity has produced documents

in response to a public-records request. *See, e.g.*, *State ex rel. Ellis v. Maple Hts. Police Dept.*, 158 Ohio St.3d 25, 2019-Ohio-4137, 139 N.E.3d 873, ¶ 6. Today though, the lead opinion declines to follow these rules. It says that when a governmental entity provides sworn testimony that it provided public records and a requesting party swears that it did not receive them, the tie goes to the relator unless the governmental entity produces some unknown quantum of additional evidence "corroborating" its sworn statement.

**{¶ 57}** That the lead opinion would change the rules about the burden of proof in public-records cases is remarkable enough. But what's even more remarkable is that it does so in a case where it determines that the relator created a fake document and submitted an affidavit that contained material falsehoods. Despite rejecting part of Kimani Ware's affidavit, the lead opinion assumes that the rest of it must be true. Then, applying the new burden-shifting presumption that it announces today, the lead opinion awards Ware a writ of mandamus, and statutory damages to boot. Because this result is inconsistent with our precedent and is impossible to square with the lead opinion's conclusion that Ware made false statements in his affidavit, I respectfully dissent.

### I. Ware's public-records requests

**{¶ 58}** Ware's mandamus claim alleges public-records-law violations based upon (1) a request for informal prison complaints that he first sent on April 6, 2020, and (2) a request that he sent by certified mail, dated April 29, and postmarked May 4.

### A. The April 6 request

**{¶ 59}** The basic facts concerning Ware's initial request for informal complaints are documented in a series of electronic communications that are part of the record. On April 6, 2020, Ware sent a public-records request through the prison's internal-communication system, asking for four informal complaints:

#336, #416, #844, #136.[2]  Two days later, Donna Crawford responded on behalf of the prison.  Crawford informed Ware that copies of the first three documents had been sent to him via "institution mail" but that there was no complaint #136.

{¶ 60} The next day, Ware wrote back saying only, "I need a copy of [#136] which was filed on 3/13/20."  If Ware had not received the other documents at this point, he did not say so.  Crawford responded to Ware's renewed request for complaint #136 by stating that she would print a copy.

{¶ 61} Ware followed up a few days later, on April 11, complaining, "[I] still have not receive[d] copies of the [informal complaint] that [I] requested on 4/ /2020, that you stated was placed in the institu[t]ion mail on 4/8/2020."  Crawford responded, "I sent your copies twice you should have them."

{¶ 62} On April 22, Ware wrote back: "[I] [have] not received any copies of the [internal complaints] today or any other day!  [Y]ou said that you have sent them to me two times but I have not received them at all!"  Crawford answered: "I placed the copies in the institution mail on both occasions.  In fact the last time you stated you were only missing one copy and I sent that one to you."

{¶ 63} Both parties have submitted affidavits attesting to their version of the facts.  Ware swears that he never received two of the documents requested in his April 6 communication.[3]  Crawford attests that she provided all the documents requested by Ware.

### B. Ware's April 29 certified-mail request: someone is not telling the truth

{¶ 64} The parties agree that Ware also sent Crawford an envelope by certified mail, dated April 29, 2020, and postmarked May 4, 2020, that contained a

---

2. The informal complaint numbers are shortened herein for ease of reference.

3. Ware's affidavit contains contradictory statements regarding his April 6 request.  In one paragraph, he attests that Crawford has not provided him with copies of the four informal complaints he asked for on April 6.  But in another paragraph, he admits that Crawford did comply with his April 29, 2020 certified-mail letter, which asked for two of the informal complaints.

public-records request. But they disagree as to what was contained within that envelope.

{¶ 65} Ware has submitted a two-page document that he swears is the request that he sent by certified mail. Ware's version of the document asks for three discrete categories of information. The first two requests are contained on the first page of the document. In "request #1," he asks for four informal complaints. (Two of the informal complaints were records that Ware had requested in his April 6 communication.) In "Public Records Request #II," he asks for several prison kites. "Public Records Request #III" is on the second page of the document and seeks certain email correspondence. At the bottom of both pages is a handwritten certified-mail tracking number. As part of the exhibit containing the requests, Ware includes a United States Postal Service Certified Mail Receipt, postmarked May 4, 2020, with the same tracking number.

{¶ 66} Crawford attests that what Ware claims to have sent is not what she received. She attaches to her affidavit a one-page communication from Ware, also dated April 29, 2020, that asks only for the four informal complaints reflected in request #1. She avers that this one-paragraph request is all that was included within the certified-mail letter that she received from Ware. Crawford includes with her affidavit a photocopy of the envelope in which she received the April 29 request, which bears the same tracking number as the certified-mail receipt submitted by Ware.

{¶ 67} Thus, Ware attests that he sent one version of the document; Crawford attests that she received a different version. Ware attests that he mailed his version in the same envelope in which Crawford attests that she received her version. So, unless the document transformed itself while in the hands of the postal service, someone isn't telling the truth.

{¶ 68} And as the lead opinion correctly concludes, the evidence strongly favors Crawford. The record contains an affidavit from Frank Cimmento Jr., the

mail clerk screener at the Trumbull Correctional Institution, detailing the prison's method for handling certified-mail requests. An inmate submits a sealed letter to prison officials, prison officials deliver the sealed envelope to post-office officials for processing, and only later does the inmate receive a receipt that includes the tracking number. Ware's request, however, contains the tracking number at the bottom of his letter. As the lead opinion points out, "Ware does not explain how he could have written the certified-mail tracking number on his April 29 public-records requests when the requests would have been sealed in an envelope before the number was assigned." Lead opinion, ¶ 21.

{¶ 69} Common sense also corroborates Crawford's version. It is undisputed that she provided the informal complaints requested by Ware in his April 29 request. If the correspondence had also included requests for other information, why would she not have responded to those requests as well?

{¶ 70} Moreover, the version that Crawford proffered is in Ware's handwriting and is dated April 29, 2020. If this is not the request that Crawford received from Ware, how did it come into her possession? Did she sneak into his cell and find an unsent request crumpled in the trash can? Did she enlist a talented forger in a scheme to create a false document to thwart Ware's request?

{¶ 71} Ware offers no explanation, though he had ample opportunity to do so in his rebuttal-evidence submission. Thus, the only reasonable conclusion is that Crawford is telling the truth and that Ware is not.

{¶ 72} The other dissent has its own theory of the April 29 document requests. It determines, based on a side-by-side comparison of scanned images of the evidence both parties submitted, that Crawford copied only a portion of the material she received. Under this view, Crawford must have made a photocopy of the first page of Ware's request but, in doing so, obscured the bottom three-fourths of the page so that only the top portion of the page was copied. As for Requests #2 and #3, the other dissent asserts with confidence, Crawford must have forwarded

24

them to someone else in the prison system without copying them. Then, ignoring the uncontradicted affidavit testimony that Ware could not have known the tracking numbers until after he sent his public-records request, the other dissent proclaims that "there is no reason to believe that the copy of the April 29 request that Ware claims he sent to Crawford" lacks reliability. Dissenting opinion of Kennedy, J., ¶ 52.

**{¶ 73}** To buy into the other dissent's imaginings requires one to make a number of other assumptions. First, that Crawford, a public official, lied in her affidavit when she swore that she received only a one-page letter from Ware that "contained [her] name, TCI address, date, and three lines of the copy request." Second, that Crawford went to the extra effort of photocopying only a single paragraph of one page of Ware's request (request #1) without copying the entire request, even though in Ware's evidence requests #1 and #2 were written on the same sheet of paper. Third, that Cimmento, another public official, is lying in his affidavit when he explains that there is no way for an inmate to know the certified-mail tracking number until after a certified-mail item is sealed in an envelope.

**{¶ 74}** But even if one accepts the other dissent's speculation about what might have happened, it is still just speculation. The other dissent's conjecture is refuted by sworn affidavit testimony to the contrary. By no stretch of the imagination has Ware shown by *clear and convincing evidence* that Crawford violated the Public Records Act in regard to the April 29 request. *See State ex rel. Cincinnati Enquirer v. Sage*, 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, ¶ 10. Thus, I agree with the majority that Ware is not entitled to a writ of mandamus as to his April 29 request.

## II. Ware is not entitled to a writ of mandamus as to the April 6 request

**{¶ 75}** As for the two documents from the April 6 request that remain in dispute, Crawford swears that she sent the documents. Ware swears that he did not

receive them. Under our existing precedent, Ware has failed to meet his burden to establish a violation of the Public Records Act.

### A. This should be an easy case

{¶ 76} It is Ware who bears the burden of proving a violation of the act. To be entitled to a writ of mandamus in a public-records case, a party must show by clear and convincing evidence a clear legal right to the requested relief and a corresponding clear legal duty on the part of the respondent to provide that relief. *Sage* at ¶ 10. Thus, Ware must "prove facts showing that he * * * requested a public record * * * and that the public office or records custodian did not make the record available." *See Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 26.

{¶ 77} Consistent with this standard, we have refused to grant a writ of mandamus when a respondent presents uncontroverted evidence that he mailed requested documents even though a relator swears that he did not receive the documents. *See State ex rel. Ware v. DeWine*, 163 Ohio St.3d 332, 2020-Ohio-5148, 170 N.E.3d 763, ¶ 25; *Ellis*, 158 Ohio St.3d 25, 2019-Ohio-4137, 139 N.E.3d 873, at ¶ 6; *see also State ex rel. McDougald v. Greene*, 160 Ohio St.3d 82, 2020-Ohio-2782, 153 N.E.3d 75, ¶ 9 (refusing to grant a writ of mandamus when a public office produced an affidavit that the requested records did not exist and relator failed to produce evidence to rebut that assertion).

{¶ 78} In this same vein, we have held that "a public office may establish by affidavit that all existing public records have been provided." *State ex rel. Frank v. Clermont Cty. Prosecutor*, 164 Ohio St.3d 552, 2021-Ohio-623, 174 N.E.3d 718, ¶ 15, citing *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 15. Such attestations are only overcome "by clear and convincing evidence showing a genuine issue of fact that additional responsive records exist." *Id.*

**{¶ 79}** Indeed, in a previous action involving the same relator and very similar facts, we reached a result opposite to the one the majority reaches today. *State ex rel. Ware v. Giavasis*, 163 Ohio St.3d 359, 2020-Ohio-5453, 170 N.E.3d 788, ¶ 32. In that case, Ware averred that he had submitted seven public-records requests in a single envelope to the Stark County Clerk of Courts. *Id.* at ¶ 31-32. The clerk's office, however, submitted an affidavit that it had received just a single request. *Id.* at ¶ 32. Because there were conflicting affidavits on the point, we deemed the evidence "evenly balanced" and found that Ware had "not satisfied the heightened burden of proof necessary" to establish a violation of the Public Records Act. *Id.*

**{¶ 80}** Under our existing precedent then, we should deny the request for a writ of mandamus. Ware has not shown his entitlement to the writ—and he certainly has not done so by clear and convincing evidence.

**{¶ 81}** Moreover, the case for denying the writ here is significantly stronger than in other "he-said, she-said" situations. The majority has already determined that part of Ware's affidavit is untruthful. And while the lead opinion doesn't come right out and say that Ware fabricated a document to collect damages for a violation of the Public Records Act, that is the only reasonable reading of its opinion.

**{¶ 82}** So, if the lead opinion will discredit Ware's sworn averments regarding his April 29 public-records request, why will it presume that he is telling the truth when it comes to his April 6 request? "*Falsus in uno, falsus in omnibus—*false in one, false in all." *Masiko v. Holder*, 562 Fed. Appx. 469, 473 (6th Cir.2014); *accord Peckham v. Ronrico Corp.*, 171 F.2d 653, 658 (1st Cir.1948) (when affidavits "state[] some facts that are not true," the "ultimate trier of fact is free to disregard the entire testimony of those affiants"). In light of the strong evidence that Ware lied in at least part of his affidavit, I see no reason to credit any other part.

### B. The majority's burden-shifting excursion

{¶ 83} Remarkably, though, the lead opinion finds that a writ of mandamus is warranted and that Ware is entitled to statutory damages. It does so by effectively flipping the burden of proof and failing to even consider whether Ware's untruthful averments call into question the veracity of Ware's entire affidavit.

{¶ 84} The lead opinion says that because a records custodian is "in the superior position to demonstrate compliance with the obligation to provide copies of public records," the records custodian must submit evidence to corroborate her sworn assertion that she provided the requested records. Lead opinion at ¶ 15. It's hard to know what to make of this new corroborating-evidence requirement. Nothing in the text of the Public Records Act supports such a requirement. And it is certainly inconsistent with our prior caselaw.

{¶ 85} It is not even clear what the lead opinion means by "corroborating evidence." Crawford's affidavit explained in detail the procedure she uses to comply with public-records requests. It also specifically described her handling of Ware's requests. The facts in Crawford's affidavit were corroborated by an internal log that she submitted documenting her interactions with Ware.

{¶ 86} The majority's objection seems to be not that Crawford failed to submit corroborating evidence, but that she didn't submit the right kind of corroborating evidence. Crawford averred, "I have retained the original printouts of the records requested by Inmate Ware #470-743, which displays the date printed, that is the proximate date the copies were sent to Inmate Ware #470-743." The majority's basis for granting the writ seems to be that Crawford did not attach these documents to her affidavit. *See* lead opinion at ¶ 15, fn. 1 ("Crawford did not, however, submit those documents as corroborating evidence").

{¶ 87} No doubt, submission of these materials would have provided additional support for Crawford's attestations. But up until today, there was no

requirement that she do so. And unlike the majority, I am unwilling to presume that she is lying about having produced and retained copies of those records.

{¶ 88} Nor am I comfortable with the open-endedness of the lead opinion's new corroborating-evidence requirement. Under the lead opinion, a relator would no longer need to "prove * * * a records custodian did not make the record available." *Welsh-Huggins*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, at ¶ 26. Instead, the records custodian would have to prove that the documents were received by the relator. Further, a sworn statement wouldn't cut it for proof; some kind of additional "corroborating evidence" would also have to be provided. But what counts as corroborating evidence and how much corroboration must be provided are questions the lead opinion leaves unanswered.

{¶ 89} There is absolutely no reason in this case to credit Ware's account over Crawford's. Rather than set sail on the lead opinion's make-it-up-as-you-go burden-shifting excursion, I would stick to our established precedent. I would deny the writ because Ware has failed to demonstrate his entitlement to such a remedy.

### III. Conclusion

{¶ 90} Because Ware has failed to meet his burden to demonstrate a violation of the Public Records Act, I would deny the requests for a writ of mandamus and for statutory damages. The majority chooses to do otherwise, so I respectfully dissent.

––––––––––––––––––

Kimani Ware, pro se.

Dave Yost, Attorney General, and Tony H. Shang, Assistant Attorney General, for respondent.

––––––––––––––––––

29