[Cite as *Akron v. State Emp. Relations Bd.*, 2013-Ohio-1213.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

CITY OF AKRON

    Appellant

    v.

STATE EMPLOYMENT RELATIONS
BOARD

    Appellee

C.A. No.    26227

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2011 04 1812

DECISION AND JOURNAL ENTRY

Dated: March 29, 2013

CARR, Judge.

{¶1} Appellant, the City of Akron, appeals the order of the Summit County Court of Common Pleas that affirmed a finding of the State Employment Relations Board that the City committed an unfair labor practice. This Court affirms.

I.

{¶2} The City and the Fraternal Order of Police are parties to a collective bargaining agreement pertaining to the Akron Police Department. Historically, the collective bargaining agreement did not include any language related to layoff, but the City's Civil Service Commission Rules did include language that applied to all City employees. Before the collective bargaining agreement between the City and the Union expired in 2009, the Mayor informed the Union that layoffs would be necessary to address an unexpected budget deficit and requested midterm bargaining to resolve the issue. The City and the Union reached an agreement that

avoided layoffs in the police department, but the Union determined that it would address layoff and recall when the parties bargained their next contract.

{¶3} On October 1, 2009, the Union served notice upon the City of its desire to begin negotiating the successor agreement. In November, the parties exchanged initial noneconomic proposals, and the Union included within those proposals a provision governing layoffs. Between November and March, the parties met frequently to negotiate. Although the parties disagree in their characterization of the conversations that were had regarding the Union's layoff and recall proposal, it is clear that the City rejected the proposal on the basis that it preferred that the Civil Service Commission Rules govern layoffs for all City employees. The City offered to negotiate the substance of the rule governing layoffs and to approach the Civil Service Commission jointly with a proposed rule amendment, but it did so on the firm condition that the Union must withdraw its collective bargaining proposal first. The Union refused.

{¶4} On March 11, 2010, one week before the parties reached impasse in their contract negotiations, the City unilaterally introduced a proposed change in the Civil Service Commission Rules that incorporated portions of the Union's contract proposal. On April 29, 2010, the Union filed an unfair labor practice charge alleging that the City failed to bargain in good faith over layoffs. The State Employment Relations Board ("SERB") found probable cause to believe that the City violated R.C. 4117.11(A)(5) and issued a complaint accordingly. The Union intervened under R.C. 4117.12(B)(1). After a hearing, the administrative law judge concluded that the City had acted in bad faith during contract negotiations with respect to layoffs by engaging in surface bargaining, noting that "[a]t a minimum" the City's decision to submit proposed changes to the Civil Service Commission during collective bargaining "created an appearance that the City had made a calculated decision to forego or circumvent its collectively bargaining with the FOP on

layoffs." SERB adopted the proposed order, and the City appealed to the Summit County Court of Common Pleas. The trial court affirmed the decision of SERB, and the City filed this appeal. The City's assignments of error are reorganized for purposes of discussion.

II.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN UPHOLDING THE STATE EMPLOYMENT RELATIONS BOARD ORDER FINDING THAT APPELLANT, CITY OF AKRON, COMMITTED AN UNFAIR LABOR PRACTICE BY ALLEGEDLY REFUSING TO BARGAIN IN GOOD FAITH WITH THE INTERVENER, FRATERNAL ORDER OF POLICE, AKRON LODGE NO. 7 ON THE LAY OFF AND RECALL ISSUE IN THAT IT FAILED TO APPLY THE TOTALITY OF THE CIRCUMSTANCES TEST, ERRONEOUSLY FOUND SUBSTANTIAL EVIDENCE EXISTED FOR THE ORDER AND FAILED TO PROTECT THE CITY'S STATUTORILY PROTECTED RIGHT NOT TO MAKE A CONCESSION.

**ASSIGNMENT OF ERROR IV**

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN UPHOLDING THAT PORTION OF THE STATE EMPLOYMENT RELATIONS BOARD ORDER ADDRESSING THE AKRON CIVIL SERVICE COMMISSION'S ("CSC") CONTEMPLATED BUT UNADOPTED AND UNIMPLEMENTED AMENDMENT OF ITS RULE 11 REGARDING LAYOFF AND RECALL.

{¶5} The City's third and fourth assignments of error are that the trial court erred in affirming SERB's decision that the City committed an unfair labor practice. We disagree.

{¶6} When reviewing an order from SERB in an unfair labor practice case, this Court's standard of review is more deferential than that used by the trial court. *State Emp. Relations Bd. v. Adena Local School Dist. Bd. of Edn.*, 66 Ohio St.3d 485, 491-492 (1993). While the trial court considers whether SERB's decision is supported by substantial evidence in the record, as required by R.C. 4117.13(D), this Court "plays a more limited role" by considering "whether the trial court has abused its discretion" in making that determination. *Id.* at 492.

{¶7}    Under R.C. 4117.11(A)(5), a public employer cannot refuse to bargain collectively with a union certified under R.C. Chapter 4117.  According to R.C. 4117.01(G),

> "To bargain collectively" means to perform the mutual obligation of the public employer, by its representatives, and the representatives of its employees to negotiate in good faith at reasonable times and places with respect to wages, hours, terms, and other conditions of employment and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement, with the intention of reaching an agreement, or to resolve questions arising under the agreement.  "To bargain collectively" includes executing a written contract incorporating the terms of any agreement reached. The obligation to bargain collectively does not mean that either party is compelled to agree to a proposal nor does it require the making of a concession.

The duty to bargain collectively requires a public employer to bargain in good faith with respect to mandatory subjects of collective bargaining or, in other words, "all matters pertaining to wages, hours, or terms and other conditions of employment * * *." *Cincinnati v. Ohio Council 8, Am. Fedn. of State, Cty. & Mun. Emps., AFL-CIO,* 61 Ohio St.3d 658, 664 (1991), quoting R.C. 4117.08(A).   The presence of good faith bargaining is determined by considering the totality of the circumstances.  *See In re Dist 1199/HCSSU/SEIU, AFL-CIO*, SERB No. 96-004, 1996 WL 34403613, *6 (Dec. 20, 1989).  This is an objective determination, however, and "[a] circumvention of the duty to bargain, regardless of subjective good faith, is unlawful." *In re Springfield Loc. School Dist. Bd. of Edn.*, SERB No. 97-007, 1997 WL 34638264, *7 (Feb. 6, 1997).   In applying the totality of the circumstances test, permissible "hard bargaining" is distinguishable from bargaining in bad faith:

> In the private sector, when a party is found to have used negotiation techniques to frustrate or avoid mutual agreement, that party is said to have engaged in "surface bargaining."  A party is alleged to have engaged in surface bargaining based upon the totality of its conduct at or away from the bargaining table, since an intent to frustrate an agreement is rarely articulated.  "More than in most areas of labor law, distinguishing hard bargaining from surface bargaining calls for sifting a complex array of facts, which taken in isolation may often be ambiguous."  "[I]f the Board is not to be blinded by empty talk and by the mere surface motions of collective bargaining, it must take some cognizance of the reasonableness of the

positions taken by an employer in the course of bargaining negotiations." Although an employer may be willing to meet at length and confer with the union, the employer has refused to bargain in good faith if it merely goes through the "motions" of bargaining, such as where an employer offers a proposal that cannot be accepted, along with an inflexible attitude on major issues and no proposal of reasonable alternatives.

(Internal citations omitted.) *Id*. *See also Twinsburg City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 172 Ohio App.3d 535, 2007-Ohio-957, ¶ 15-19 (9th Dist.).

{¶8}    In this case, SERB concluded that the City violated R.C. 4117.11(A)(5) because, although it appeared that the City subjectively believed that it was acting in good faith by insisting that negotiations regarding layoffs take place in the context of the Civil Service Commission, the objective standard of good faith bargaining was not met.  Specifically, SERB noted that to the extent negotiation happened, the City always couched it in terms of a refusal to bargain in the context of negotiating a successor agreement.  SERB concluded that "at a minimum," the City's position that it negotiated in good faith was undermined when it unilaterally proposed rule changes to the Civil Service Commission that incorporated portions of the Union's contract proposal.  The trial court found that this conclusion was supported by substantial evidence in the record, also noting that the City's submission to the Civil Service Commission was of particular significance:

> [T]he City's March 11, 2010 unilateral decision to introduce proposed amendments to [Civil Service Commission] Rule 11 to be of significance.  1) it was unilateral; 2) it is an alternative route fraught with landmines; 3) it is the antithesis to the CBA; 4) there is no confidentiality in the negotiations with the [Civil Service Commission] and finally; 5) even if the amendment was adopted by the [Civil Service Commission], further negotiations are mandated between the City and each individual bargaining unit in regards to the impact/implementation issue * * *.

> This unilateral decision to seek approval for the [Civil Service Commission] was a recipe for disaster and negatively impacted * * * on the credibility of the City's arguments throughout this matter.

The trial court did not abuse its discretion in making this determination.

{¶9} As both SERB and the trial court concluded, the City's submission of proposed changes to the Civil Service Commission Rules is significant to our consideration of the totality of the circumstances. The City correctly argues that the Civil Service Commission can adopt rules that relate to mandatory subjects of collective bargaining. "SERB cannot prohibit a city or its civil service commission from *enacting* legislation, including civil service rules, because such a remedy exceeds SERB's jurisdiction; SERB must focus on the public employer's *implementation* of those legislative enactments." (Emphasis in original.) *In re City of Akron*, SERB No. 97-006, 1997 WL 34638265, *6 (Mar. 6, 1997). Consequently, a city may adopt civil service rules that relate to mandatory subjects of bargaining but, before implementing the rules, it must bargain with the unions representing all employees who would be affected. *Id.* at * 7. This principle is not in dispute. The fact that a city can adopt civil service rules that apply to bargaining unit employees does not, however, insulate it from its obligations under R.C. 4117.11(A)(5) to bargain in good faith with respect to mandatory subjects of bargaining. In other words, while the adoption of civil service rules in and of itself is not a failure to bargain, the manner in which a municipality does so is part of the totality of the circumstances that must be considered if R.C. 4117.11(A)(5) allegations are made in the course of negotiating a labor agreement.

{¶10} The totality of the circumstances surrounding the parties' negotiations leads us to conclude that the trial court did not abuse its discretion in determining that, at least at the point of the City's proposal to change the civil service rules, the City failed to bargain in good faith regarding layoffs and recall. The City's proposal came several months after the parties began negotiating a successor labor agreement. Over the course of those months, the City steadfastly maintained that it would not negotiate layoffs in the context of the labor agreement. The City

expressed willingness to approach the Civil Service Commission with a joint proposal, but would only do so on the condition that the Union withdrew its layoff proposal during contract negotiations, thus forfeiting both factfinding and binding conciliation under R.C. 4117.14(D)(1). Finally, the City proposed an amendment to the civil service rules without prior notice to the Union and that incorporated part of the Union's proposal regarding the collective bargaining agreement. Viewing these facts together, culminating in the City's submission of the proposal to the civil service commission, the City failed to bargain over layoffs and recall in good faith.

{¶11} This is not to say that the City was required to respond with a substantive proposal and concede that layoff procedures must be covered within the contract. An employer can take a firm, principled position that a contract should remain silent on a mandatory subject of bargaining. *See Cincinnati v. Ohio Council 8, Am. Fedn. of State, Cty. & Mun. Emps., AFL-CIO*, 61 Ohio St.3d at 666 ("So long as it bargains in good faith, the city may lawfully 'just say no' to any proposal from the employee representative which conflicts with the charter, be it on a 'mandatory' or 'permissive' subject of bargaining."). But upon consideration of all the circumstances, which are unique to this case, we conclude that the trial court did not abuse its discretion in upholding SERB's determination that the City violated R.C. 4117.11(A)(5). The City's third and fourth assignments of error are overruled.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN UPHOLDING THAT PORTION OF THE STATE EMPLOYMENT RELATIONS BOARD ORDER FINDING THAT THE UNFAIR LABOR PRACTICE CHARGE WAS TIMELY FILED AS THERE IS NO SUBSTANTIAL EVIDENCE DEMONSTRATING THAT THE CHARGE WAS FILED WITHIN NINETY (90) DAYS OF THE ALLEGEDLY UNLAWFUL ACTIVITY.

{¶12} The City's fifth assignment of error is that the trial court abused its discretion by concluding that the Union's unfair labor practice charge was timely filed. We disagree.

{¶13} An unfair labor practice charge must be filed within ninety days of the alleged violation. *See* R.C. 4117.12(B). *See also State ex rel. Tritt v. State Emp. Relations Bd.*, 97 Ohio St.3d 280, 2002-Ohio-6437, ¶ 8. "The ninety-day time period does not commence until the charging party knew or should have known of the conduct which constituted the improper conduct and actual damage ensued." *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 184 (1997), citing *Fraternal Order of Police, Ohio Labor Council, Inc. v. Hubbard Twp. Trustees*, 68 Ohio App.3d 843, 847 (11th Dist.1990).

{¶14} In this case, the Union filed the unfair labor practice charge on April 29, 2010, only forty-eight days after the City submitted proposed changes to the civil service commission rules regarding layoffs. In light of our conclusion regarding the significance of this date with respect to the unfair labor practice, the charge was filed well within the ninety days required by R.C. 4117.12(B). The City's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN FAILING TO FIND THAT THE MATTER WAS MOOT WHEN THE UNDISPUTED AND STIPULATED EVIDENCE DEMONSTRATES UNEQUIVOCALLY THAT EVEN BEFORE [THE] ULP CHARGE WAS BROUGHT, THE PARTIES WERE CONTINUING THEIR GOOD FAITH NEGOTIATIONS THROUGH THE SUBMISSION OF ALL

UNRESOLVED ISSUES TO THE MANDATORY DISPUTE RESOLUTION PROCEDURE AND BY THE TIME OF THE TRIAL COURT DECISION HAD SIGNED AN AGREEMENT INCORPORATING THE DISPUTED LANGUAGE.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN FAILING TO FIND THAT THE INTERVENER'S UNFAIR LABOR PRACTICE COMPLAINT RELATING TO THE ISSUE OF LAYOFF AND RECALL WAS MOOT, AND THAT NO REMEDY COULD BE IMPOSED BECAUSE AT THE TIME THE CHARGE WAS FILED, THE ISSUE HAD BEEN SUBMITTED TO FACTFINDING, AND, FOLLOWING FACTFINDING AND CONCILIATION, LANGUAGE REGARDING SAME WAS INCORPORATED INTO THE PARTIES' COLLECTIVE BARGAINING AGREEMENT.

{¶15} The City's first and second assignments of error argue that the unfair labor practice charge is moot because the City and the Union engaged in factfinding and conciliation, resulting in a successor labor agreement, while the charge was pending. We disagree.

{¶16} R.C. 4117.14(D) provides that if factfinding does not resolve a bargaining impasse between a public employee union and a public employer of law enforcement officers, the disputed matters must be submitted to conciliation. On an issue-by-issue basis, the conciliator must select between the final settlement offers proposed by the union and the public employer, with consideration for the factors set forth in R.C. 4117.14(G)(7). Once the conciliator has heard the matter, "[t]he issuance of a final offer settlement award constitutes a binding mandate to the public employer and the exclusive representative to take whatever actions are necessary to implement the award." R.C. 4117.14(I). Although the process of factfinding and conciliation are part of the collective bargaining process under R.C. Chapter 4117, the nature of the parties' participation at that stage of negotiation is different. Notably, the final offer settlement procedure is mandatory with respect to law enforcement. *See Jefferson Cty. Sheriff v. Ohio Patrolmen's Benevolent Assn.*, 7th Dist. No. 05 JE 36, 2006–Ohio–1055, ¶ 28. An

employer's participation in factfinding and, ultimately, conciliation is required by law and it does not necessarily signify a change of heart such that an unfair labor practice under R.C. 4117.11(A)(5) must be moot. The stage at which the parties find themselves during the collective bargaining process may be part of the totality of the circumstances relevant to determining the existence of an unfair labor practice, but it does not render an unfair labor practice charge moot. The trial court did not abuse its discretion in this respect, and the City's first assignment of error is overruled.

{¶17} The City has also argued that the unfair labor practice charge is moot because the contract resulting from conciliation led to a labor agreement that included layoff and recall provisions. Specifically, the City has argued that SERB's order requiring the City to cease and desist from refusing to bargain regarding layoffs and, conversely, to bargain in good faith, is meaningless. We do not agree.

{¶18} When considering whether unfair labor practices charges are moot in light of subsequent negotiations, the standard that is applied is whether the matter is "capable of repetition, yet evading review." *In re Cent. State University*, SERB No. 85-056, 1985 WL 1083707, *2 (Oct. 10, 1985), quoting *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 546-547, (1976). In that case, the unfair labor practice charge alleged that the employer refused to bargain collectively with the union while the union president held office. *Id.* at *1. SERB adopted the hearing officer's decision that the employer committed an unfair labor practice, noting that at issue in the case was "the attempt by one party to dictate the choice of representative of the other party * * * [which] is to strike at the core of democratic process." *Id.* at *2. Rejecting the employer's argument that its subsequent participation in negotiations and commitment not to interfere with selection of the union's bargaining representative rendered the matter moot, SERB

concluded that "[t]he seriousness of the action which prompted the charge coupled with the on-going quality of the collective bargaining process argue[d] against rendering the matter moot." *Id. See also SERB v. City of Warrensville Hts*, SERB HO No. 1997-HO-013, 1997 WL 34638242, *6 (Mar. 25, 1997) (failure-to-bargain charge not moot although the respondent executed a memorandum of understanding and complied with factfinder's recommendations).

{¶19} The trial court did not abuse its discretion by concluding that these principles apply in this case. When an unfair labor practice occurs at a late stage in the negotiation of a new contract, it is probable that factfinding and conciliation may conclude before the unfair labor practice has been litigated to conclusion. Likewise, the parties' negotiating relationship is ongoing, and testimony before SERB established that questions regarding submission of matters to the civil service commission have happened in the past and are likely to happen in the future. The City's second assignment of error is overruled.

### III.

{¶20} The City's assignments of error are overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, P. J.
CONCURS.

BELFANCE, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

WILLIAM E. BLACKIE, Attorney at Law, for Appellant.

CHERI B. CUNNINGHAM, Director of Law, and MICHAEL J. DEFIBAUGH, Assistant Director of Law, for Appellant.

MICHAEL DEWINE, Ohio Attorney General, and AARON W. JOHNSTON, Assistant Attorney General, for Appellee.

SUSANNAH MUSKOVITZ, Attorney at Law, for Appellee.